**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| ARMANDO PLIEGO GONZALEZ, | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and NEBRASKA FIREARMS OWNERS ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:11-CV-335 |
| | ) | |
| CITY OF OMAHA, NEBRASKA, a municipal | ) | |
| corporation, JIM SUTTLE, individually and in his | ) | |
| official capacity as Mayor of Omaha, Nebraska, | ) | |
| and ALEX HAYES, individually and in his official | ) | |
| capacity as Chief of Police of Omaha, Nebraska, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

NOW COME the Plaintiffs, ARMANDO PLIEGO GONZALEZ, SECOND AMENDMENT

FOUNDATION, INC. and NEBRASKA FIREARMS OWNERS ASSOCIATION, by and through

undersigned counsel, by and through undersigned counsel, and submit their Memorandum of

Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: November 18, 2011                                    Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))            Bernie Glaser, Esq. (#11521 (NE))
LAW FIRM OF DAVID G. SIGALE, P.C.            GLASER LAW
739 Roosevelt Road, Suite 304                       411 South 13th Street, Suite 327
Glen Ellyn, IL 60137                                       Lincoln, NE 68508
630.452.4547                                                (402) 435-4411
dsigale@sigalelaw.com                                 Bernieglaser@windstream.net
Admitted *Pro hac vice*

                                            By:  _____/s/ David G. Sigale_____
                                                         David G. Sigale

                                            Attorneys for Plaintiffs

i

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………………………………………. ii

Preliminary Statement ………………………………………………………………………………. 1

Statement of Facts …………………………………………………………………………………. 1

    A.    Omaha's Ordinance Bans Legal Aliens from Concealable Firearm
        Registration ………………………………………………………………………………… 1

    B.    The Registration Prohibition's Impact on PLIEGO and Similarly-Situated
        Omaha Residents ……………………………………………………………………3

Summary of Argument ……………………………………………………………………………… 5

Argument …………………………………………………………………………………………… 5

    I.    THE SECOND AMENDMENT APPLIES TO PLAINTIFF PLIEGO AND THE
        ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN MEMBERS ………………………… 6

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF
        PRELIMINARY INJUNCTIVE RELIEF………………………………………………… 8

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM
        THE BAN ON REGISTRATION BY LEGAL ALIENS …………………………………… 9

    IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS OMAHA'S BAN ON
        CONCEALABLE FIREARM REGISTRATION VIOLATES THEIR SECOND AND
        FOURTEENTH AMENDMENT RIGHTS ……………………………………………… 10

    V.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
        INJUNCTIVE RELIEF………………………………………………………………… 11

Conclusion ………………………………………………………………………………………… 12

ii

*TABLE OF AUTHORITIES*

<u>Cases</u>

*Bridges v. Wixon,*

326 U.S. 135 (1945) ……………………………………………………………………………………… 7

*District of Columbia v. Heller,*

128 S. Ct. 2783 (2008)…………………………………………………………………… 8, 10, 11

*Elrod v. Burns,*

427 U.S. 347, 373, (1976) …………………………………………………………………………. 8

*Ezell v. City of Chicago,*

2011 U.S. App. LEXIS 14108 (7th Cir., July 6, 2011) ……………………………………… 7, 8, 9

*Graham v. Richardson,*

403 U.S. 365 (1971) ……………………………………………………………………………….6, 7

*Kwong Hai Chew v. Colding,*

344 U.S. 590 (1953) …………………………………………………………………………………. 7

*Lowry v. Watson Chapel School District,*

540 F.3d 752, 762 (8th Cir. 2008) ………………………………………………………………. 8

*McDonald v. City of Chicago,*

130 S. Ct. 3020 (2010)…………………………………………………………………………… 8, 10

*Phelps-Roper v. Nixon,*

545 F.3d 685 (8th Cir. 2008) …………………………………………………………………… 9

*Richmond Newspapers v. Virginia,*

448 U.S. 555 (1980) ………………………………………………………………………………. 10

*Russian Volunteer Fleet v. United States,*

282 U.S. 481 (1931) ………………………………………………………………………………. 7

*Shrink Missouri Government PAC v. Adams*,

151 F.3d 763, 764 (8th Cir. 1998) ................................................................................ 8

*Sierra Club v. United States Army Corps of Engineers*,

645 F.3d 978 (8th Cir. 2011) ................................................................................. 10

*Takahashi v. Fish & Game Commission*,

334 U.S. 410 (1948) .................................................................................... 7

*United States v. Carolene Products Co.*,

304 U.S. 144 (1938) .................................................................................... 6

*United States v. Verdugo-Urquidez*,

494 U.S. 259, 265 (1990) .................................................................................... 6

*United States ex rel. Turner v. Williams*,

194 U.S. 279 (1904) .................................................................................... 6

*Winter v. NRDC, Inc.*,

555 U.S. 7 (2008) .................................................................................... 5

*Yick Wo v. Hopkins*,

118 U.S. 356 (1886) .................................................................................... 6

*Wong Wing v. United States*,

163 U.S. 228 (1896) .................................................................................... 7

*Zadvydas v. Davis*,

553 U.S. 678 (2001) .................................................................................... 7


Constitutional Provisions

U.S. Const. amend. II .................................................................................... *passim*

U.S. Const. amend. XIV .................................................................................... 6

Statutes, Rules, and Ordinances

Omaha Mun. Code § 1-10 ……………………………………………………………………………….…… 3

Omaha Mun. Code § 20-191 ………………………………………………………………………………… 2

Omaha Mun. Code § 20-193 …………………………………………………………………………………. 3

Omaha Mun. Code § 20-251 ………………………………………………………………………………… 1

Omaha Mun. Code § 20-253 ………………………………………………………………………………… 2

Omaha Mun. Code § 20-256 ………………………………………………………………………………… 2

 R.R.S. Neb. §§ 69-2401 - 69-2425 ……………………………………………………………………… 3

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

#### *PRELIMINARY STATEMENT*

Omaha Municipal Code § 20-253(9), which denies otherwise-qualified legal aliens the ability to register concealable firearms for home possession, flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms.  Also, because otherwise-qualified U.S. citizens are not restricted from registering concealable firearms in Omaha, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated.  The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are likely to succeed on the merits by the conclusion of this litigation.  The City's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of Omaha residents has been and continues to be wrongfully denied the right and ability to defend their persons and homes from criminal intruders.  Omaha has no valid interest in completely banning legal aliens from registering concealable firearms for home possession when citizens are not so banned. Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

#### *STATEMENT OF FACTS*

*A.        Omaha's Ordinance Bans Legal Aliens from Concealable Firearm Registration*

The City of Omaha requires that its residents who wish to purchase and possess a "concealable" firearm for their homes must register said firearm with the Omaha Police Department ("OPD").  Omaha Municipal Code § 20-251(a) states that "[i]t shall be unlawful for any person to own, have possession of, or maintain control over any concealable firearm which

1

has not been registered to said person with the chief of police in accordance with this division,

except when such possession or control is with the knowledge and express consent of the

person in whose name such concealable firearm is registered. "

"Concealable firearm" is defined as "A firearm having a barrel less than 18 inches in

length." Omaha Municipal Code § 20-191.  This definition includes handguns.

While the Plaintiffs are not challenging Omaha's entire registration scheme in this

proceeding, the gravamen of Plaintiffs' Complaint is Omaha Municipal Code § 20-253, which

states, in relevant part:

> (a)  Any person desiring to register a concealable firearm shall make an application to the chief of police stating therein that he or she holds the qualifications to register a concealable firearm in accordance with this section.

> (b)  The chief of police will conduct an investigation to determine if the applicant is qualified to register the firearm.  A concealable firearm may not be registered to any person who:

> . . .

> **(9)  Is not a citizen of the United States.**  (Emphasis added.)

This Code section prohibits PLIEGO and all other legal aliens residing in Omaha from

registering and possessing handguns for possession in their homes.

If a resident of Omaha purchases a concealable firearm outside of Omaha, it must be

brought to the OPD and turned in until the purchaser's registration application is approved.  If

the firearm is purchased in Omaha, the purchaser cannot take it from the place of purchase,

but must instead take the receipt to OPD and apply for a registration permit.

Omaha Municipal Code § 20-256 states that "Any person whose application for

registration of a concealable firearm is denied shall have ten days in which to provide for

2

proper registration or other lawful disposition of the concealable firearm.  During this time the chief of police shall maintain custody of the concealable firearm.  If the applicant fails to provide for the proper registration or other lawful disposition of the concealable firearm within this time, it shall be presumed that the concealable firearm is an unregistered concealable firearm and the chief of police may apply to the municipal court for an order of confiscation."

The penalty for possessing an unregistered concealable firearm in Omaha is ". . . a fine of not exceeding $500.00, or by imprisonment not to exceed six months, or both such fine and imprisonment in the discretion of the court."   Omaha Municipal Code § 1-10.  "Each day any such violation or failure to perform such act shall continue shall constitute a separate offense, unless otherwise specifically provided."  *Id.*  The firearm will also be confiscated and destroyed by the City upon conviction for a violation.   Omaha Municipal Code §20-193.

It is unclear what Omaha's purpose was for enacting this prohibition, which serves solely to discriminate against Omaha's qualified legal alien population, including PLIEGO and members of SAF and NFOA, though there is no purpose Omaha can offer that passes constitutional muster.

B.       *The Registration Prohibition's Impact on PLIEGO and Similarly-Situated Omaha Residents.*

PLIEGO has been a permanent resident alien of the United States since on or about October 9, 2008.  He has lived in Omaha for more than a decade.  His wife is also a lawful permanent resident and has been in Omaha since 1999.  They are both employed in Omaha, and their four children are all products of the Omaha educational system, including its institutions of higher learning.  His family was victimized by a home invasion in 2010.  PLIEGO has a Nebraska State permit to purchase a handgun under R.R.S. Neb. §§ 69-2401 through 69-

3

2425.  PLIEGO is concerned about his ability to defend his family and himself in the event of a

further violence in his home.  *See* Declaration of Armando Pliego-Gonzalez.

SAF is a non-profit membership organization incorporated under the laws of

Washington with its principal place of business in Bellevue, Washington.  SAF's membership

includes lawfully admitted aliens residing in Omaha, Nebraska.  SAF has over 650,000 members

and supporters nationwide, including more than one thousand in the City of Omaha, Nebraska.

The purposes of SAF include education, research, publishing and legal action focusing on the

Constitutional right privately to own and possess firearms.  SAF litigates this action on behalf of

itself and its members, and as such has organizational standing to pursue this action and

Motion.  *See* Declaration of Julianne H. Versnel, Director of Operations of SAF.

NFOA is an organization incorporated under the laws of Nebraska with its principal place

of business in Syracuse, Nebraska.  The purposes of NFOA include education, political lobbying

and legal action focusing on the Constitutional right privately to own and possess firearms in

Nebraska.  NFOA litigates this action on behalf of itself and its supporters, which include

lawfully admitted aliens residing in Omaha, Nebraska, and as such has organizational standing

to pursue this action and Motion.  *See* Declaration of Andreas J. Allen, President of NFOA.

Every day that passes without relief from Omaha's registration prohibition, all legal

aliens residing in Omaha who are otherwise qualified to possess firearms, including PLIEGO and

the members and supporters of Plaintiffs SAF and NFOA, are frustrated in their ability to

purchase and possess handguns for self-defense, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, PLIEGO and the qualified

legal alien members of SAF and NFOA would possess concealable firearms including handguns

in their homes, but refrain from doing so for fear of arrest, prosecution, fine and incarceration.

## SUMMARY OF ARGUMENT

Omaha's prohibition on legal aliens registering handguns for home possession and self-

defense, regardless of said legal alien's possession of a State permit, unquestionably violates

the constitutional guarantees of keeping arms and equal protection under the laws, as do any

other of Omaha's various ordinances that, regardless of their validity as generally applied,

undeniably frustrate constitutionally-secured rights of handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary

injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm in the

absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs

relief cannot injure Defendant.  And given the degree to which Omaha's registration prohibition

threatens the safety of Plaintiffs, their families and the affected general public, the public

interest - already favoring the exercise of fundamental rights - is clearly satisfied by

immediately enjoining Omaha's unconstitutional practices.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*

*v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs easily satisfy all three threshold requirements for

obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

I.   THE SECOND AMENDMENT APPLIES TO PLAINTIFF PLIEGO AND THE ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN MEMBERS

The question of whether PLIEGO, a lawful alien residing in Omaha, and the similarly-situated organizational Plaintiffs' members, enjoy Second and Fourteenth Amendment rights is an easy one – the Supreme Court has ruled that they do.  ". . . '[T]he people' protected by the . . . Second [Amendment] . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990).  That includes those who are legally in the country.  *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904).

"The Fourteenth Amendment provides, 'Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside.'"  *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment.  *Graham*, 403 U.S. at 371, 377.  A classification based on an individual's status as an alien is "inherently suspect and subject to close judicial scrutiny."  *Id.* at 372.  "Aliens as a class are a prime example of a 'discrete and insular' minority (*see United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4 (1938)) for whom such heightened judicial solicitude is appropriate."  *Graham*,

6

403 U.S. at 372. "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under non-discriminatory laws." *Id.* at 374 (quoting *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 420 (1948)).

Further, legal aliens in the United States have been extended the same Constitutional rights as citizens in a variety of other situations for more than one hundred years. *See*, *e.g.*, *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (resident alien is a "person" within the meaning of the Fifth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (resident aliens have First Amendment rights); *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) (Just Compensation Clause of Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (resident aliens entitled to Fifth and Sixth Amendment rights). Even illegal aliens then-presently in the Country receive protection under the Fourteenth Amendment's Due Process Clause. (*See*, *e.g.*, *Zadvydas v. Davis*, 553 U.S. 678, 693 (2001)).

Recently, the Seventh Circuit compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 2011 U.S. App. LEXIS 14108 (7th Cir., July 6, 2011) (ban on gun ranges within City limits ruled unconstitutional). According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id.* at *60. This means Omaha's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.* at *59. Though the Eighth Circuit has yet to consider the issue, the *Ezell* decision is comprehensive, well-considered, and its

7

holdings and reasoning should be followed by this Court.  Doing so, it is evident Omaha cannot

defend its ban.  Further, under any level of scrutiny (rational basis not even being up for

consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), Omaha's

ordinance fails.

II.      PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY
         INJUNCTIVE RELIEF.

         PLIEGO, and other members and supporters of SAF and NFOA, enjoy a fundamental

right to keep and bear arms.  *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010)

(majority op.) (Alito, J.).  "[T]he inherent right of self-defense has been central to the Second

Amendment right."  *Heller*, 128 S. Ct. at 2817.  The denial of constitutional rights, even if such

deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive

relief (*See, e.g., Lowry v. Watson Chapel School District*, 540 F.3d 752, 762 (8th Cir. 2008) (First

Amendment freedom of expression) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)); *See also*

*Shrink Missouri Government PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) (unconstitutional

campaign contribution limits as violative of freedom of speech).

         As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental

freedoms of the Second Amendment to those fundamental freedoms of the First Amendment

and deemed the deprivation of either to be irreparable harm.  The *Ezell* Court held that "[t]he

loss of a First Amendment right is frequently presumed to cause irreparable harm based on

"the intangible nature of the benefits flowing from the exercise of those rights; and the fear

that, if those rights are not jealously safeguarded, persons will be deterred, even if

imperceptibly, from exercising those rights in the future." . . .  The Second Amendment protects

similarly intangible and unquantifiable interests.  *Heller* held that the Amendment's central

component is the right to possess firearms for protection. (cite omitted).  Infringements of this

right cannot be compensated by damages." *See Ezell*, 2011 U.S. App. 14108 at *32.

Put simply, if OMC § 20-253(9) is not struck down, legal aliens including the plaintiffs will

continue to be unconstitutionally frustrated in their ability to exercise their fundamental

Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-

defense, the inability to access constitutionally-protected arms also causes a profound loss of a

sense of one's security, to say nothing of the irreparable harm resulting from a successful

criminal attack, or tragic accident that could have been averted with access to a firearm.

The irreparable harm flowing from any delays in obtaining relief is palpable.

III.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN
         ON REGISTRATION BY LEGAL ALIENS.

There is no way to quantify, in terms of money damages, the inability to engage in

protected Second Amendment activity such as possession of a concealable firearm such as a

handgun.  The infringement of constitutional rights is frequently considered to be beyond

quantification with money damages.  *See Ezell*, 2011 U.S. App. 14108 at *32; *See also, e.g.*,

*Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (First Amendment free speech rights).

No legal remedies will be available to legal aliens whose registration applications for

handguns for home possession will be refused because non-citizens are denied equal

protection of Omaha's firearms laws.  And quite obviously, no legal remedies will suffice to

compensate those killed or injured for lack of lawfully-possessed defensive arms, owing to

Omaha's registration ban.

9

IV.      PLAINTIFFS WILL PREVAIL ON THE MERITS, AS OMAHA'S BAN ON CONCEALABLE
         FIREARM REGISTRATION VIOLATES THEIR SECOND AND FOURTEENTH AMENDMENT
         RIGHTS.

Possession of Handguns for Lawful Purposes Including Self-Defense Lies at the Core of the
Second Amendment.

        "[T]he standard for preliminary injunctive relief requires a showing of a "likelihood of

success on the merits rather than actual success" as necessary for permanent relief."  *Sierra*

*Club v. United States Army Corps of Engineers*, 645 F.3d 978, 993 (8th Cir. 2011).

        "[T]he Court has acknowledged that certain unarticulated rights are implicit in

enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have

been recognized by the Court as indispensable to the enjoyment of rights explicitly defined."

*Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980).  Unsurprisingly, the Supreme

Court has noted that the enumerated, articulate right to possess a firearm for lawful purposes,

most notably for self-defense, are fundamentally core to the Second Amendment.  *McDonald*,

130 S.Ct. at 3043.

        In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any

balancing test or other extended analysis before striking down Washington, D.C.'s ban on the

possession of functional firearms for self-defense, as that law literally contradicted a "core"

aspect of Second Amendment rights.  *Heller*, 128 S. Ct. at 2818.  A complete ban on possession

of concealable firearms by an entire class of legal Omaha residents, based on nothing more

than citizenship status, will meet the same fate.

        Omaha's Ordinance fails all four factors.  It is not within the City's constitutional power

to ban otherwise qualified legal alien residents from possessing concealable firearms, including

handguns which have been expressly deemed constitutionally protected by the Supreme Court

10

(*See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster.") - doing so violates the Second and Fourteenth Amendments. The city has no interest, let alone an extremely strong one, in denying all legal aliens their fundamental Second Amendment right of handgun possession.  The Plaintiffs are those who are otherwise qualified to possess firearms, including having a State permit.  In light of the above, a preliminary injunction against the enforcement of OMC § 20-253(9) should be immediately entered.

V.       THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits.  Absent relief they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, if not actual physical harm.  The City has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified Omaha residents to defend their families and themselves. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

11

## CONCLUSION

Omaha cannot deny fundamental constitutional rights to an entire class of its residents.

Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: November 18, 2011                                Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))                   Bernie Glaser, Esq. (#11521 (NE))
LAW FIRM OF DAVID G. SIGALE, P.C.                       GLASER LAW
739 Roosevelt Road, Suite 304                           411 South 13th Street, Suite 327
Glen Ellyn, IL 60137                                    Lincoln, NE 68508
630.452.4547                                            (402) 435-4411
dsigale@sigalelaw.com                                   Bernieglaser@windstream.net
Admitted *Pro hac vice*

                                    By: _____/s/ David G. Sigale_____
                                            David G. Sigale

                                    Attorneys for Plaintiffs


## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1.      On November 18, 2011, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2.      Pursuant to F.R.Civ.P 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                    _____/s/ David G. Sigale_____
                                    One of the Attorneys for Plaintiffs